## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

GAYLE GREGORY,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

1:20-cv-04983-NLH

**OPINION**

---

**APPEARANCES:**

ADRIENNE FREYA JARVIS
800 NORTH KINGS HIGHWAY
SUITE 304
CHERRY HILL, NJ 08034

    *On behalf of Plaintiff*

DAVID LANCE LEACH
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), regarding Plaintiff's application for Supplemental

Security Income ("SSI")[1] under Title XVI of the Social Security

---

[1] Supplemental Security Income is a program under the Social
Security Act that provides supplemental security income to

Act.  42 U.S.C. § 401, et seq.  The issue before the Court is
whether the Administrative Law Judge ("ALJ") erred in finding
that there was "substantial evidence" that Plaintiff was not
disabled since January 1, 2015.  For the reasons stated below,
this Court will reverse that decision and remand the matter for
further proceedings.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

     Plaintiff, Gayle Gregory, claims that she cannot work and
is entitled to SSI due to her various impairments including
degenerative disc disease of the cervical and lumbosacral
spines, asthma, obesity, and chronic pain syndrome.  On July 17,
2015,[2] Plaintiff protectively filed an application for SSI,[3]

---

individuals who have attained age 65, or are blind or disabled.
42 U.S.C. § 1381 et seq.

[2] Plaintiff was fifty-four years old on July 17, 2015 when she
filed her claim.  She attained fifty-five years of age in 2016.
She was fifty-seven years old on November 7, 2018, the date of
the ALJ's decision.  See 20 C.F.R. § 416.963(d), (3) ("Person
closely approaching advanced age. If you are closely approaching
advanced age (age 50-54), we will consider that your age along
with a severe impairment(s) and limited work experience may
seriously affect your ability to adjust to other work. Person of
advanced age.  We consider that at advanced age (age 55 or
older), age significantly affects a person's ability to adjust
to other work. We have special rules for persons of advanced age
and for persons in this category who are closely approaching
retirement age (age 60 or older).").

[3] A protective filing date marks the time when a disability
applicant made a written statement of his or her intent to file
for benefits.  That date may be earlier than the date of the
formal application and may provide additional benefits to the
claimant.  See SSA Handbook 1507; SSR 72-8.

alleging that she became disabled as of January 1, 2015.[4]

After Plaintiff's claim was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ, which was held on July 26, 2018.  On November 7, 2018, the ALJ issued an unfavorable decision.  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on March 5, 2020, making the ALJ's decision final.  Plaintiff brings this civil action for review of the Commissioner's decision.

## II.  DISCUSSION

### A.   Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan,

---

[4] Even though Plaintiff contends that her onset date of disability is January 1, 2015, the relevant period for Plaintiff's SSI claim begins with her July 17, 2015 application date, through the date of the ALJ's decision on November 7, 2018.  See 20 C.F.R. § 416.202 (claimant is not eligible for SSI until, among other factors, the date on which she files an application for SSI benefits); 20 C.F.R. § 416.501 (claimant may not be paid for SSI for any time period that predates the first month she satisfies the eligibility requirements, which cannot predate the date on which an application was filed).

970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).

Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at

262; <u>Friedberg v. Schweiker</u>, 721 F.2d 445, 447 (3d Cir. 1983);

<u>Curtin v. Harris</u>, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.   Standard for SSI**

The Social Security Act defines "disability" for purposes
of an entitlement to a period of disability and disability
insurance benefits as the inability to engage in any substantial
gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to result in
death, or which has lasted or can be expected to last for a
continuous period of not less than 12 months.  <u>See</u> 42 U.S.C. §
1382c(a)(3)(A).

Under this definition, a Plaintiff qualifies as disabled
only if his physical or mental impairments are of such severity
that he is not only unable to perform his past relevant work,
but cannot, given his age, education, and work experience,
engage in any other type of substantial gainful work which
exists in the national economy, regardless of whether such work
exists in the immediate area in which he lives, or whether a
specific job vacancy exists for him, or whether he would be
hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B)
(emphasis added).

The Commissioner has promulgated regulations[5] for

---

[5] The regulations were amended for various provisions effective
March 27, 2017.  <u>See</u> 82 F.R. 5844.  The parties do not indicate

determining disability that require application of a five-step

sequential analysis.  See 20 C.F.R. § 416.920.  This five-step

process is summarized as follows:

1.   If the claimant currently is engaged in substantial
     gainful employment, he will be found "not disabled."

2.   If the claimant does not suffer from a "severe
     impairment," he will be found "not disabled."

3.   If the severe impairment meets or equals a listed
     impairment in 20 C.F.R. Part 404, Subpart P, Appendix
     1 and has lasted or is expected to last for a
     continuous period of at least twelve months, the
     claimant will be found "disabled."

4.   If the claimant can still perform work he has done in
     the past ("past relevant work") despite the severe
     impairment, he will be found "not disabled."

5.   Finally, the Commissioner will consider the claimant's
     ability to perform work ("residual functional
     capacity"), age, education, and past work experience
     to determine whether or not he is capable of
     performing other work which exists in the national
     economy.  If he is incapable, he will be found
     "disabled."  If he is capable, he will be found "not
     disabled."

20 C.F.R. § 416.20(b)-(f).

Entitlement to benefits is therefore dependent upon a

finding that the claimant is incapable of performing work in the

national economy.  This five-step process involves a shifting

burden of proof.  See Wallace v. Secretary of Health & Human

Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four

---

that any of the amendments are applicable to the issues
presented by Plaintiff's appeal.

steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence. See id.  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform."  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C.  Analysis**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability.  At step two, the ALJ found that Plaintiff's impairments of degenerative disc disease of the cervical and lumbosacral spines, asthma, obesity were severe.  At step three, the ALJ determined that Plaintiff's severe impairments or her severe impairments in combination with her other impairments did not equal the severity of one of the listed impairments.  The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work with certain restrictions.[6]

---

[6] See 20 C.F.R. § 416.967 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.  These terms have the same meaning as

After considering the testimony of a vocational expert ("VE"), the ALJ determined at step four that Plaintiff's RFC rendered her capable of performing her past relevant work as a school bus monitor, as that position was actually performed by Plaintiff, and as it is generally performed in the national economy.  20 C.F.R. § 416.960(b)(2).  Even though the ALJ was permitted to stop the sequential step analysis at step four because she determined that Plaintiff was capable of performing her past relevant work, see 20 C.F.R. § 416.20(3), the ALJ continued to step five as an alternative finding.  At step five, in further consultation with the VE, the ALJ determined that Plaintiff's RFC enabled her to perform several other jobs in the national economy, including a warehouse worker, cleaner, and store laborer.

Plaintiff presents several issues on appeal.  Plaintiff argues that the ALJ's determination that she was capable of performing her prior job as a school bus monitor was in error, and she also argues that the ALJ's alternative conclusion that she was capable of performing the other jobs suggested by the VE

---

they have in the Dictionary of Occupational Titles, published by the Department of Labor.  In making disability determinations under this subpart, we use the following definitions: . . . (c) Medium work.  Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.").

was also in error.  Plaintiff challenges these findings based on what she contends is faulty testimony by the VE, which presented conflicts and errors that the ALJ was required to reconcile but she failed to do.  Plaintiff also argues the ALJ erred in the RFC determination, contending that the ALJ failed to fully consider evidence of her herniated lumbar disc, and the ALJ failed to consider her chronic pain syndrome at all.

The findings at steps four and five are based in large part on the RFC determination.  See 20 C.F.R. § 416.20(b)-(f) ("[T]he Commissioner will consider the claimant's [RFC], age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy."); Pidgeon v. Colvin, 2016 WL 2647666, at *13 (D.N.J. 2016) (citing Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) (quoting Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005)) ("[A] hypothetical posed to a vocational expert [at steps four and five] must reflect all of a claimant's impairments" as accounted for in the RFC, and "objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself.").  Thus, the Court will first consider Plaintiff's challenge to the ALJ's RFC determination, and in particular the evaluation of Plaintiff's chronic pain syndrome.

10

A claimant's RFC reflects "what [the claimant] can still do despite [his or her] limitations."  20 C.F.R. § 416.945(a). When making the RFC determination,[7] the ALJ is required to:

> [C]onsider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  By objective medical evidence, we mean medical signs and laboratory findings . . . .  By other evidence, we mean . . . statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work. . . .

20 C.F.R. § 416.929.

Additionally, the RFC assessment takes into consideration all of a claimant's medically determinable impairments in combination, including those that the ALJ has found to be severe, as well as those that are not deemed to be severe at step two.  See 20 C.F.R. § 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 416.920(c), 416.921, and 416.923, when we assess your residual functional capacity.").

Here, the ALJ found Plaintiff's RFC to be as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20

---

[7] The controlling regulations are clear that the RFC finding is a determination expressly reserved to the Commissioner rather than any medical source.  20 C.F.R. §§ 416.927(d)(2), 416.946(c).

11

> CFR 416.967(c) except she can occasionally climb ramps or
> stairs; never climb ladders, ropes or scaffolds; frequently
> balance, stoop, kneel, and crouch; and occasionally crawl.
> She can do frequent fingering and handling. She must avoid
> concentrated exposure to extreme heat or cold, wetness or
> humidity, irritants such as fumes, odors, dust and gases,
> poorly ventilated areas, and exposure to chemicals.

(R. at 18.)

Plaintiff argues that in formulating this RFC, the ALJ
failed to consider Plaintiff's documented chronic pain syndrome,
the impact of which the ALJ was required to assess in
combination with her severe impairments when formulating
Plaintiff's RFC.  Plaintiff argues this constitutes reversible
error because the ALJ's failure to address this impairment is
not harmless, as Plaintiff's chronic pain demonstrates she is
more limited functionally than found by the ALJ.  Plaintiff
further argues that this faulty RFC determination undermines the
analysis of steps four and five, causing the ALJ's decision at
step four, and the alternative decision at step five, to be
unsupported by substantial evidence.

The Court agrees that the ALJ did not properly consider
Plaintiff's chronic pain syndrome in her decision and ultimate
RFC determination.  Even though the ALJ did not find Plaintiff's
chronic pain syndrome to be a severe impairment at step two,[8]
Plaintiff's chronic pain syndrome is a recognized medical

---

[8] Plaintiff does not challenge that finding.

12

condition that the ALJ is required to consider in the RFC assessment.  See SSR 03-2p ("Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome").

The regulations explain, "RSDS/CRPS are terms used to describe a constellation of symptoms and signs that may occur following an injury to bone or soft tissue.  The precipitating injury may be so minor that the individual does not even recall sustaining an injury. Other potential precipitants suggested by the medical literature include, but are not limited to, surgical procedures, drug exposure, stroke with hemiplegia, and cervical spondylosis."  SSR 03-2p.  "RSDS/CRPS constitutes a medically determinable impairment when it is documented by appropriate medical signs, symptoms, and laboratory findings . . . ."  Id.

The regulations continue, "Chronic pain and many of the medications prescribed to treat it may affect an individual's ability to maintain attention and concentration, as well as adversely affect his or her cognition, mood, and behavior, and may even reduce motor reaction times. These factors can interfere with an individual's ability to sustain work activity over time, or preclude sustained work activity altogether."  Id. The regulations direct, "When evaluating duration and severity, as well as when evaluating RFC, the effects of chronic pain and the use of pain medications must be carefully considered," and "[c]laims in which the individual alleges RSDS/CRPS are

13

adjudicated using the sequential evaluation process, just as for any other impairment." Id.

Here, Plaintiff's medical records show that she was treated for pain as of her January 1, 2015 alleged disability onset date, and diagnosed with chronic pain syndrome by her treating medical providers, continuing through July 16, 2018, which is the last medical report in the record. (R. at 378, 380, 383, 389, 392, 395, 398, 401, 454, 458.) The ALJ's decision, however, fails to mention this impairment. Instead, the ALJ very minimally recites Plaintiff's reports of pain as they relate to her back condition, rather than a separate and independent impairment.

Focusing only on the medical evidence after January 1, 2015 as it relates to Plaintiff's pain,[9] the ALJ sets forth the following:

- At the hearing on July 26, 2018, the "claimant testified that, due to lower back pain, she cannot sit, stand or walk for prolonged periods of time, or lift/carry significant weights in a work setting." (R. at 19.)

---

[9] Plaintiff's treatment for her pain pre-dates Plaintiff's January 1, 2015 alleged disability onset date, but the Court focuses on the records following her alleged disability onset date because that is the dispositive date as of which Plaintiff must establish she was unable to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The Court notes that a good portion of the medical evidence recounted by the ALJ in her decision is dated prior to January 1, 2015. That evidence was gathered as part of a prior SSI claim.

- On May 8, 2017, Stephanie Zdanowski, an advanced practice nurse at CamCare, reported that the claimant complained of back pain and requested Tramadol rather than Naprosyn. (Id.)

- Progress notes from 2015 and 2016 indicate that Percocet was "working well," or providing "moderate" pain relief. (R. at 20.)

- In the last report from North American Spine and Pain, on January 15, 2018, Dr. Lauren Sylvinn found muscle spasm, tenderness and a restricted range of motion of the lumbosacral spine, with forward flexion reduced from 90 degrees to 60 degrees, but negative straight leg raising. She reported "moderate relief" from Percocet.  She stated that they were treating the claimant conservatively, but she wanted to try alternative modalities of treatment.  (R. at 20.)

This recitation of a small portion of Plaintiff's treatment for pain ignores three years of medical records from North American Spine and Pain in which Plaintiff relates significant and debilitating pain.  For example, treatment notes from North American Spine and Pain relate why Plaintiff sought treatment for pain:

> Gregory, Gayle is a very pleasant woman with a history of back pain, low back, radiating down bilateral legs. Describes facetongenic pain, L>R, worse in am, with weather related changes, with flexion/extension and rotation. PT with minimal relief.  Will again attempt to proceed with left L3-S1 MBB then right to rule out facet mediated pain - continues to await insurance approval. Presents today with change in condition, which began 1 year ago. She currently reports that the back pain, neck pain, lower back pain, shoulder pain is causing her the most significant amount of pain.  She describes these painful conditions to be severe in nature and states that it is burning and aching.  It is constantly associated with extended standing, walking.  She has undergone PT in the past without significant sustained pain relief.  She reports that lying down can relieve the

15

pain exacerbate his condition. . . . Her past medications
include Percocet 10/325 q6 prn with moderate relief.  Will
add Ibuprofen 800mg q12 prn for additional relief.

. . .

This is a very pleasant 54 yrs old female with a history of
acute on chronic neck & lower back pain following MVA pain,
which have progressively worsened over the course of the
last ten years.  She has undergone conservative care
including medical management without significant sustained
pain relief.  She is requesting alternative modalities of
treatment.

(R. at 354-401.)

As of August 14, 2015, Plaintiff's diagnoses by North
American Spine & Pain were lumbago, lumbosacral spondylosis
without myelopathy, degeneration of lumbar or lumbosacral
intervertebral disc, and chronic pain syndrome.  (R. at 378.)
Although the other diagnoses changed somewhat over time, the
diagnosis of chronic pain syndrome remained for every treatment
record through Plaintiff's last visit on January 15, 2018.  (R.
at 444.)

The ALJ failed to mention Plaintiff's chronic pain syndrome
or specifically reference any of the treatment notes spanning
three years from North American Spine and Pain, except for one.
As set forth above, the ALJ recounted the last report from North
American Spine and Pain on January 15, 2018.  Although that
treatment note discusses Plaintiff's pain and how she was
responding to pharmaceutical treatment, the ALJ included the
following:  "But, shortly thereafter, the claimant was

16

discharged from treatment due to taking Benzodiazepine that was not prescribed." (R. at 20.)

The ALJ also specifically referenced one other treatment record from RA Pain Associates, where Plaintiff sought treatment after American Spine and Pain:

> On June 11, 2018, the claimant sought treatment at RA Pain Associates. Dr. Caitlin Innerfield, a board certified physiatrist, began treating the claimant. But, on July 16, 2018, Dr. Innerfield stated that she was discharging the claimant because she provided a "cold" urine drug screen sample (practitioners reject samples that are too hot or too cold). She stated that the claimant could return for non-narcotics only (Exhibit 15F, p 7).

(R. at 20-21.)

The proverbial elephant-in-the-room presented by the ALJ's decision is three-fold. First, the ALJ appears to rely upon the general relief narcotics[10] provided to Plaintiff from 2015 through 2018 to support Plaintiff's ability to perform work at the medium exertional level,[11] while at the same time the ALJ

---

[10] Opiates or opioids are drugs used to treat pain. The term narcotic refers to either type of drug. https://medlineplus.gov/ency/article/000949.htm

[11] For example, to discount Plaintiff's claim of total disability, the ALJ noted, "Progress notes from 2015 and 2016 indicate that Percocet was 'working well', or providing 'moderate' pain relief." (R. at 20.)  The ALJ also noted, "The claimant's treatment has been essentially routine and conservative in nature, consisting of medications, with no implementation of more aggressive care." (R. at 22.)  If Plaintiff requires Percocet to provide relief from pain, and that "moderate pain relief" through "conservative" treatment in the form of "medications" renders Plaintiff capable of performing work at the medium exertional level, the Court

ignores Plaintiff's chronic pain syndrome, which condition is one of the reasons for Plaintiff's prescription and use of those narcotics.  Second, by not factoring Plaintiff's pain into the RFC analysis, the ALJ appears to find contradictorily that Plaintiff's pain is not actually severe enough to warrant treatment with narcotics.  Third, by only specifically detailing two treatment notes which discuss Plaintiff's discharge from pain management treatment, the ALJ appears to challenge Plaintiff's credibility and suggest opioid dependency.

These issues show that the ALJ's RFC determination is not supported by substantial evidence.  The ALJ must address head on Plaintiff's chronic pain syndrome and treatment for pain, rather than ignore it, or discount it through innuendo while at the same time rely upon it to support Plaintiff's ability to work.[12] The regulations provide guidance to the ALJ on how to accomplish

---

queries how Plaintiff, while taking a painkiller that combines oxycodone - an opioid - and acetaminophen, can "occasionally climb ramps or stairs," or monitor children on the school bus, or perform the requirements of the other jobs, such as warehouse worker, which requires the ability to "[c]onvey materials and items from receiving or production areas to storage or to other designated areas by hand, handtruck, or electric handtruck," (DOT code 922.687-058, https://occupationalinfo.org/92/922687058.html).

[12] Defendant argues that even though the ALJ does not specifically reference that impairment, the ALJ properly considered Plaintiff's chronic pain syndrome in the context of assessing her severe impairments.  The ALJ's decision does not support that argument.

this.

SSR 13-2p provides:

Sections 223(d)(2)(C) and 1614(a)(3)(J) of the Social Security Act (Act) provide that a claimant "shall not be considered to be disabled * * * if alcoholism or drug addiction would * * * be a contributing factor material to the Commissioner's determination that the individual is disabled." . . . Substance Use Disorders are diagnosed in part by the presence of maladaptive use of alcohol, illegal drugs, prescription medications, and toxic substances (such as inhalants). For this reason, DAA [drug addiction and alcoholism] does not include: . . . Addiction to, or use of, prescription medications taken as prescribed, including methadone and narcotic pain medications.

SSR 16-3p provides:[13]

Adjudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments. In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-

---

[13] Effective March 26, 2016, the SSA issued Social Security Ruling 16-3p, which superseded SSR 96-7p, to eliminate the use of the term "credibility." SSR 16-3p explains, "We solicited a study and recommendations from the Administrative Conference of the United States (ACUS) on the topic of symptom evaluation. Based on ACUS's recommendations and our adjudicative experience, we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation. . . ." SSR 16-3p.

related activities . . . .

In applying these, and other, regulations, and by directly addressing Plaintiff's chronic pain syndrome and treatment for that condition, the ALJ may then endeavor to formulate an RFC supported by substantial evidence.[14]

When an ALJ has failed to apply the correct legal standards and her conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Melkonyan v. Sullivan, 501 U.S. 89, 99 (1991) (providing that under Sentence Four of 42 U.S.C. § 405(g), a court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing").

The ALJ's current RFC determination is not supported by the record evidence, but the Court declines to opine as to what Plaintiff's RFC will be or how the ALJ will resolve steps four and five following the revised RFC determination. The SSA is in a better position than this Court to determine Plaintiff's proper RFC. The Court will therefore reverse the ALJ's decision and remand the matter for further analysis. Nothing in this

---

[14] At the same time, the ALJ has the opportunity to consider whether Plaintiff suffers from a lumbar herniated disc, a diagnosis in the record, and its impact, if any, on her RFC. (R. at 295, 299, 303, 335, 344, 348, 356, 360, 362, 366, 372, 378, 381, 386, 389, 392, 395, 398, 401.)

opinion should be construed as an opinion on the outcome of those proceedings.

**III. Conclusion**

For the reasons expressed above, the ALJ's determination that Plaintiff was not totally disabled as of January 1, 2015 because Plaintiff retained the ability to perform past relevant work and other work in the national economy is not supported by substantial evidence.  The decision of the ALJ will therefore be reversed and the matter remanded for further proceedings consistent with this Opinion.

An accompanying Order will be issued.


Date:  July 26, 2021                          s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.